CASE NO. 25-30603

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

AMY HAMM, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED; JOYE WILSON,

Plaintiffs-Appellees,

v.

OCHSNER-ACADIA, L.L.C.; ACADIA LAPLACE HOLDINGS, LLC,

Defendants-Appellants.

---

From the United States District Court for the Eastern District of Louisiana
Honorable Susie Morgan, District Judge
Case No. 2:20-cv-01515-SM-DPC

_____

## DEFENDANTS-APPELLANTS' BRIEF

---

Philip J. Giorlando
BREAZEALE, SACHSE & WILSON, LLP
909 Poydras Street
New Orleans, LA 70112
Tel: 504.680.5244
Philip.giorlando@bswllp.com

Frederick L. Conrad III
Matthew A. Caplan
HOLLAND & KNIGHT LLP
511 Union St., Suite 2700
Nashville, TN 37219-8966
Tel: 615.244.6380
Trip.conrad@hklaw.com
Matthew.caplan@hklaw.com

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PARTIES

Case No. 25-30603, *Hamm et al. v. Acadia LaPlace Holdings LLC, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  Trial Judge:

    The Honorable Susie Morgan, United States District Judge for the Eastern District of Louisiana;

    The Honorable Donna Phillips Currault, United States Magistrate Judge for the Eastern District of Louisiana.

2.  Parties:

    Plaintiffs-Appellees:

    Amy Hamm

    Joye Wilson

    Defendants-Appellants:

    Acadia LaPlace Holdings, LLC

    Ochsner-Acadia, LLC

3.  Attorneys:

    Counsel for Plaintiffs-Appellees:

    Joseph C. Peiffer
    Daniel Centner
    PEIFFER WOLF CARR KANE & CONWAY, APLC
    1519 Robert C. Blakes, Sr. Drive
    New Orleans, LA 70130

i

Tel: 504.523.2434
jpeiffer@pawcklegal.com
dcentner@pwcklegal.com

Carolyn H. Cottrell
Ori Edelstein
Robert E. Morelli, III
SCHNEIDER WALLACE COTTRELL KONECKY LLP
2000 Powell St., Suite 1400
Emeryville, CA 94608
Tel: 415.421.7100
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
rmorelli@schneiderwallace.com

Counsel for Defendants-Appellants:

Philip J. Giorlando
BREAZEALE, SACHSE & WILSON, LLP
909 Poydras Street
New Orleans, LA 70112
Tel: 504.680.5244
Philip.giorlando@bswllp.com

Frederick L. Conrad III
Matthew A. Caplan
HOLLAND & KNIGHT LLP
511 Union St., Suite 2700
Nashville, TN 37219-8966
Tel: 615.244.6380
Trip.conrad@hklaw.com
Matthew.caplan@hklaw.com

4. Entities with a Financial Interest:

No other entities have a known financial interest in this case.

5.　　Federal Rule of Appellate Procedure 26.1:

Defendant-Appellant Acadia LaPlace Holdings, LLC is a Delaware limited liability company with its principal place of business in LaPlace, Louisiana. Acadia LaPlace Holdings, LLC is a solely owned subsidiary of Acadia JV Holdings, LLC which is itself a solely owned subsidiary of Acadia Healthcare Company, Inc. Acadia Healthcare Company, Inc. is a publicly traded Delaware corporation with its principal place of business in Franklin, Tennessee.

Defendant-Appellant Ochsner-Acadia, LLC is a Delaware Limited Liability Company with its principal place of business in LaPlace, Louisiana. Ochsner-Acadia is a joint venture between Acadia LaPlace Holdings, LLC and Ochsner Clinic Foundation. Ochsner Clinic Foundation is a Louisiana 501(c)(3) Nonprofit with its principal place of business in Jefferson, Louisiana.

*/s/ Frederick L. Conrad III*
*Counsel for Defendants-Appellants*

iii

# STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants request oral argument. Defendants-Appellants believe that the Court would benefit from hearing counsel explain the parties' respective views and interpretations concerning the issues presented in this appeal.

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PARTIES ......................................i

STATEMENT REGARDING ORAL ARGUMENT .........................iv

TABLE OF CONTENTS.........................................................................v

TABLE OF AUTHORITIES ............................................................vii

STATEMENT OF JURISDICTION ....................................................1

INTRODUCTION ..................................................................................5

STATEMENT OF THE CASE ..........................................................11

    **I.** FACTUAL BACKGROUND ......................................................11

        **A.** River Place Behavioral Health...................................11

        **B.** Named Plaintiffs Amy Hamm and Joye Wilson .....12

        **C.** Differing Meal Break Experiences ...........................14

    **II.** PROCEDURAL BACKGROUND ..........................................17

SUMMARY OF THE ARGUMENT.................................................21

ARGUMENT ......................................................................................21

    **I.** Standard of Review ..................................................................21

    **II.** Plaintiffs' Required Certification Burdens.........................22

        **A.** Plaintiffs' Required Certification Burden Under the FLSA ..........................................................22

        **B.** Plaintiffs' Required Certification Burden Under Rule 23 .........................................................25

**C.** **Alignment of Liability-Determining Issues Across the Class and Collective** ................................. 28

**III.** **Resolution of Plaintiffs' Claims Turns on Whether the Breaks at Issue were *Bona Fide* Meal Breaks, which in Itself Depends on the Frequency of their Interruption** .................................................................. 29

**IV.** **The District Court Impermissibly Ignored the Predominant-Benefit Test and Certified the Class and Collective Based on an Irrelevant Common Fact** .............. 34

**V.** **The District Court Erred by Removing Plaintiffs' Burdens to Establish the Requisite Factors Before Certifying the FLSA Collective and Rule 23 Class.** ........... 39

    **A.** **The District Court Removed Plaintiffs' Burdens Under the FLSA and Swales** ..................... 39

    **B.** **Plaintiffs Failed to Satisfy Every Rule 23 Requirements, yet the District Court Removed Their Burdens There Too** .......................................... 43

        1. Plaintiffs Failed to Establish Typicality or Adequacy .................................................................. 44

        2. Plaintiffs Failed to Establish Predominance ....... 45

        3. Plaintiffs Failed to Establish Superiority ............ 47

**VI.** **The District Court Compounded its Errors by Not Permitting Defendants to Move to Decertify the Collective** ............................................................................. 49

**CONCLUSION** ........................................................................ 54

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agner v. United States*,
  8 Cl. Ct. 635 (1985)......................................................................................37

*Ahmad v. Old Republic Nat'l Title Ins. Co.*,
  690 F.3d 698 (5th Cir. 2012)..................................................................26, 34

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................26

*Angell v. GEICO Advantage Ins. Co.*,
  67 F.4th 727 (5th Cir. 2023) ........................................................................50

*Baldridge v. SBC Commc'ns, Inc.*,
  404 F.3d 930 (5th Cir. 2005)..........................................................................1

*Belgada v. Hy's Livery Serv., Inc.*,
  220 Conn. App. 102 (2023) ..........................................................................32

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003)......................................................10, 26, 34, 47

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001)..................................................................26, 43

*Bergeron v. Ochsner Health Sys.*,
  2017 U.S. Dist. LEXIS 135622 (E.D. La. Aug. 24, 2017) ...........................31

*Bratcher v. Nat'l Standard Life Ins. Co.*,
  365 F.3d 408 (5th Cir. 2004) (J. Clement dissenting) ..................................21

*Calderone v. Scott*,
  838 F.3d 1101 (11th Cir. 2016)......................................................................1

*Carter v. Jackson-Madison County Hosp. Dist.*,
  2011 U.S. Dist. LEXIS 35163 (W.D. Tenn. March 31, 2011) ......................33

*Casa Orlando Apts., Ltd. v. Fannie Mae*,
  624 F.3d 185 (5th Cir. 2010)........................................................................21

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................46

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. 2020).................................................25

*Dean v. Akal Sec., Inc.*,
    3 F.4th 137 (5th Cir. 2021) ............................................ *passim*

*DeKeyser v. Thyssenkrupp Waupaca, Inc.*,
    860 F.3d 918 (7th Cir. 2017)...................................................1

*DeVito v. Longwood Sec. Servs.*,
    2016 Mass. Super. LEXIS 828 (Suffolk Cty. Sup. Ct. Dec. 23,
    2016) ......................................................................................32

*Dual Drilling Co. v. Mills Equip. Investments, Inc.*,
    721 So.2d 853 (La. 12/1/98) ..................................................31

*Ellis v. Commonwealth Worldwide Chauffeured Transp. of NY,
    LLC*,
    2012 U.S. Dist. LEXIS 40288 (E.D.N.Y. March 23, 2012)............32

*Elson v. Black*,
    56 F.4th 1002 (5th Cir. 2023) ...............................................42

*Flecha v. Medicredit, Inc.*,
    946 F.3d 762 (5th Cir. 2020)..................................................28

*Formica v. US Envtl. Inc.*,
    2018 U.S. Dist. LEXIS 115084 (E.D. Pa. July 11, 2018) ...............32

*Haviland v. Catholic Health Initiatives–Iowa*,
    729 F. Supp. 2d 1038 (S.D. Iowa 2010) ..................................37

*Hawkland v. Hall*,
    860 F. App'x 326 (5th Cir. 2021) .............................................1

*Jackson v. Wal-Mart Stores*,
    2005 Mich. App. LEXIS 2975 (Mich. Ct. App. 2005).................33

*Jones-Turner v. Yellow Enterprise Sys., LLC*,
    597 Fed. Appx. 293 (6th Cir. 2015).........................................36

2

*Kaiser v. St. Luke's Episcopal-Presbyterian Hosps., Inc.*,
  2025 WL 3537524 (E.D. Mo. Dec. 10, 2025) ......................................36

*Lee v. Coahoma Cnty*,
  937 F.2d 220 (5th Cir. 1991) ...........................................7, 30, 35

*Loy v. Rehab Synergies, L.L.C.*,
  71 F.4th 329 (5th Cir. 2023) .................................................49

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D.NJ, 1987)...............................................22, 23

*Madison v. Chalmette Ref., L.L.C.*,
  637 F.3d 551 (5th Cir. 2011)..................................................47

*Magana v. Shore Constr., LLC*,
  2018 U.S. Dist. LEXIS 41497 (E.D. La. Mar. 13, 2018)..................................41

*Mallory v. Lease Supervisors, LLC*,
  2018 U.S. Dist. LEXIS 114106 (N.D. Tex. July 10, 2018) .............................41

*Mason v. Amarillo Plastic Fabricators*,
  2015 U.S. Dist. LEXIS 95624 (N.D. Tex. July 22, 2015)..............................42

*Melgar v. O.K. Foods, Inc.*,
  2015 U.S. Dist. LEXIS 41807 (W.D. Ark. March 31, 2015) ...........................32

*Microsoft v. Baker*,
  137 S. Ct. 1702 (2017) ......................................................1

*Miller v. Thedacare Inc.*,
  2018 U.S. Dist. LEXIS 7767 (E.D. Wis. Jan. 17, 2018) ...............................37

*Moore v. MW Servicing, LLC*,
  2023 U.S. Dist. LEXIS 133773 (E.D. La. Aug. 2, 2023) ..............................50

*Morrison v. Veale*,
  2017 U.S. Dist. LEXIS 42099 (M.D. Ala. Mar. 23, 2017) ............................44

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)..................................................2, 3

*Poirier v. Carson*,
    537 F.2d 823 (5th Cir. 1976)..................................................................52

*Price v. Martin*,
    79 So. 3d 960 (La. 2011)......................................................................31

*Robertson v. Monsanto Co.*,
    287 Fed. Appx. 354 (5th Cir. 2008).....................................................27

*Robinson v. Texas Auto. Dealers Ass'n*,
    387 F.3d 416 (5th Cir. 2004)................................................................46

*Sampson v. United Servs. Auto. Ass'n*,
    83 F.4th 414 (5th Cir. 2023) ................................................................51

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d Cir. 2020) ..................................................................1

*Slade v. Progressive Sec. Ins. Co.*,
    856 F.3d 408 (5th Cir. 2017).................................................................51

*Steering Committee v. Exxon Mobil Corp.*,
    461 F.3d 598 (5th Cir. 2006).................................................................47

*Stepp v. Seton Family of Hosps.*,
    2018 U.S. Dist. LEXIS 227650 (W.D. Tex. Apr. 17, 2018) ...........................37

*Stramaski v. Lawley*,
    44 F.4th 318 (5th Cir. 2022) ................................................................44

*Swales v. KLLM Transp. Servs., LLC*,
    985 F.3d 430 (5th Cir. 2021)......................................................*passim*

*Unger v. Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005).................................................................25

*United States v. Billingsley*,
    615 F.3d 404 (5th Cir. 2010).................................................................21

*Vuyanich v. Republic Nat. Bank of Dallas*,
    82 F.R.D. 420 (N.D. Tex. 1979) ...........................................................52

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................. *passim*

*Wellmeier v. Lankau*,
  2025 La. App. LEXIS 2038 (La.App.3 Cir. 10/29/25) ....................................31

**Statutes**

**29 U.S.C. § 216(b)** ................................................................ *passim*

**Fair Labor Standards Act** ......................................................... *passim*

**Other Authorities**

**Fed. R. Civ. P. 23** ................................................................ *passim*

## STATEMENT OF JURISDICTION

This Court may exercise jurisdiction over an interlocutory appeal of Rule 23 class certification decisions under Federal Rule of Civil Procedure 23(f). *See Microsoft v. Baker*, 137 S. Ct. 1702, 1709 (2017). Additionally, this Court may also exercise pendent appellate jurisdiction to review FLSA certification and decertification decisions when the relevant issues for those decisions are "inextricably intertwined" with the appeal of a Rule 23 certification decision. *See Hawkland v. Hall*, 860 F. App'x 326, 328–29 (5th Cir. 2021); *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 509–10 (2d Cir. 2020) (reviewing both Rule 23 class certification and FLSA decertification in a "hybrid FLSA and state [law]" suit on appeal under Rule 23(f)); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 860 F.3d 918, 921 (7th Cir. 2017) ("We analyze the two classes [Rule 23 and FLSA] together"); *Calderone v. Scott*, 838 F.3d 1101, 1102 (11th Cir. 2016) (considering both Rule 23 and FLSA certification decisions together on appeal under Rule 23(f)); *cf. Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932–33 (5th Cir. 2005) (denying Rule 23(f) appeal involving only certification of a FLSA collective while indicating that it would be appealable if intertwined with a Rule 23 class certification).

The District Court's FLSA and Rule 23 certification orders here are intertwined in a manner that goes well beyond merely sharing a factual record or a common legal theory. These orders rest on the same merits-determining question—

1

whether the breaks at issue were *bona fide* meal periods—and depend on whether that question can be answered with common proof. Because the District Court applied the same erroneous reasoning to both frameworks, the defects in the Rule 23 analysis necessarily apply to the FLSA collective as well, and a reversal of Rule 23 certification would simultaneously support a reversal of FLSA certification.

This interdependence is also amplified by the unusual procedural posture the District Court has created. After granting FLSA certification, the District Court later erroneously determined that this Court in *Swales v. KLLM Transp. Servs., LLC* removed the ability to subsequently decertify that collective. 985 F.3d 430 (5th Cir. 2021). This error leaves the parties trapped in a position where the District Court believes it must conduct a FLSA collective trial, even if this Court's ruling on this appeal informs it that the collective should never have been certified in the first place. The District Court's misinterpretation of *Swales* thus makes the FLSA order procedurally—as well as factually and legally—inseparable from the Rule 23 order: reversing one without the other would force a trial on an unsustainable collective.

The existence of the same fundamental legal errors that apply to both classes and the unique procedural posture distinguishes this case from decisions in other circuits holding that mere factual or legal similarity alone do not create pendent appellate jurisdiction. *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) (declining to exercise pendent appellate jurisdiction when the two issues were

merely factual and legally *similar*). Such cases involved independent certification rulings with different issues that could stand or fall on their own. *Id.* Here, by contrast, not only are the facts and law similar, but the same legal errors apply equally to both. Moreover, the District Court's misapplication of *Swales* has made the FLSA order dependent on the Rule 23 ruling: the District Court has tied its own hands and created a situation in which the validity of the collective cannot be reviewed except in tandem with the Rule 23 class. The Rule 23 and FLSA orders therefore "are inextricably intertwined" because resolving the Rule 23 errors necessarily confirms the FLSA errors, and declining to review the FLSA decisions would produce an unworkable and legally erroneous trial and procedural posture upon remand. Accordingly, jurisdiction exists to review and correct the Rule 23 and FLSA certification orders simultaneously.

Defendants-Appellants filed a timely Rule 23(f) Petition for Permission to Appeal the District Court's four different orders granting class certification under Rule 23, granting collective certification FLSA, and denying Defendants-Appellants' motion for decertification of the FLSA collective. ROA.11181–11215. This Court granted Defendants-Appellants' motion in full on October 22, 2025, without distinguishing between the Rule 23 and FLSA decisions. ROA.11268–11269.

**STATEMENT OF ISSUES**

Whether the District Court erred in certifying and maintaining both a Rule 23 class and an FLSA collective based on the same legally erroneous framework by:

1.  Failing to conduct the required liability-focused, evidence-based analysis under both §216(b) and Rule 23 and instead certifying a collective and class based solely on the immaterial fact that meal breaks were "susceptible to interruption."

2.  Improperly removing Plaintiffs' evidentiary burdens under the FLSA and Rule 23 and certifying a collective without requiring Plaintiffs to demonstrate that (a) they were similarly situated on the merits-determining issues; (b) they were typical or adequate representatives; (c) common answers predominated on issues able to drive the resolution of the litigation; or (d) a class action could be maintained to determine liability or damages without devolving into mini-trials.

3.  Barring Defendants from moving to decertify the collective, based on a misapplication of *Swales*, thereby preventing Defendants from presenting post-certification evidence showing that the Plaintiffs and opt-ins are not similarly situated.

**INTRODUCTION**

Plaintiff-Appellee Amy Hamm—later joined by Joye Wilson—(together "Plaintiffs") brought this hybrid Rule 23 class and FLSA collective action against Defendants-Appellants Acadia LaPlace Holdings, LLC and Ochsner-Acadia, LLC ("Defendants"), eventually alleging that the unpaid 30-minute meal breaks for patient care employees at River Place Behavioral Health Hospital ("River Place") were not *bona fide* breaks and should be treated as compensable time under both the FLSA and Louisiana common law. It is undisputed, however, that all patient care employees were instructed to remain clocked in if they missed their meal break and that they were to be paid if their breaks ever were interrupted to perform work. Thus, they were fully compensated for all time spent working, even if that work was performed during a planned break. It is also undisputed that employees were to be relieved from all duties during their meal breaks, were free to take those breaks wherever they liked (including outside the facility), and had no limitations placed on their freedom during break time beyond needing to clock back in and begin working at the end of the 30-minute break. The only disputed fact that could possibly support Plaintiffs' compensable meal break claims under state or federal law was that these breaks were so frequently interrupted that employees had to effectively remain "on-call" during them, and, therefore, that time spent on their break—while clocked out and not working—should still have been compensable.

During their depositions, however, both Hamm and Wilson affirmatively denied that they personally were ***ever*** interrupted to perform work during a meal break at River Place. Several other patient care employees likewise affirmatively denied ever having a single meal break interrupted even once throughout their employment. Further, those employees who asserted they had been interrupted during meal breaks described experiencing widely varying frequencies of interruption depending on numerous different factors in their working conditions, including their specific job duties, the shift they worked, the unit where they worked, their supervisor, the operational phase of the facility during their employment, where they chose to take their breaks, and even their age and gender. Despite this undisputed evidence establishing that Plaintiffs could not even assert the class claims on their own behalf—and that individualized inquiries predominated over the sole contested issue that could possibly support a claim for any given class member's own meal breaks being compensable—the District Court nevertheless certified a FLSA collective, denied Defendants the ability to seek its decertification, and then certified a Rule 23 class of nearly a thousand patient care employees.

The only basis articulated by the District Court for the certification rulings was that the mere ***theoretical possibility of interruption*** alone was sufficient to establish a FLSA collective and Rule 23 class, even when that class knowingly contained numerous individuals—including both named plaintiffs—who never once

had an interrupted meal break. This "susceptible to interruption" basis for a class and collective runs directly counter to this Court's binding precedent that the mere possibility of interruption alone does not render meal breaks compensable time. *See Dean v. Akal Sec., Inc.*, 3 F.4th 137, 145 (5th Cir. 2021) ("Any infrequent interruptions do not invalidate the policy of a noncompensable meal period."); *Lee v. Coahoma Cnty*, 937 F.2d 220, 225 (5th Cir. 1991) (holding "meal breaks were *bona fide* meal periods" even when employees "were called back [] in an occasional emergency"). Thus, such susceptibility to interruption by itself cannot be a valid similarity or commonality to unite the collective or class because it is not capable of driving class-wide resolution of the claims.

In relying on this "susceptible to interruption" theory alone to certify both a FLSA collective and a Rule 23 class, the District Court not only failed to consider the relevant inquiry necessary to resolve Plaintiffs' claims and whether that inquiry could be performed on a class-wide basis, but it misapplied binding precedent in this Circuit for the required showing plaintiffs must make to obtain such certifications, functionally removing Plaintiffs' certification burdens entirely. With respect to FLSA collective certification, the District Court's flipped this Court's decision in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021) on its head. First, the District Court failed to rigorously scrutinize all the evidence showing that Hamm was not similarly situated to the putative collective with respect to the relevant issue

7

of break interruption before granting collective certification based solely on the fact that Hamm could have been—but was not—interrupted during her meal breaks. Then the District Court compounded its error by holding that *Swales* precluded Defendants from even being permitted to seek decertification of the collective at the close of discovery, regardless of any evidence showing that Hamm (and the later added Wilson) and the collective were not similarly situated with respect to the relevant issues for determining liability on the claims. Effectively, rather than applying *Swales* to correct the problematic lenient standard in the first step of the old *Lusardi* certification process, the District Court's decisions paradoxically used *Swales* to remove any standard at all from Plaintiffs and then to block Defendants from even being permitted to show that the proper standard had not been met.

In its Rule 23 certification orders, the District Court similarly found that Plaintiffs were typical of the class and adequate representatives solely because their meal breaks were also "susceptible to interruption" despite their admissions that their meal breaks were never in fact interrupted. The District Court also simply ignored Hamm's inherent conflict with representing the class—and inadequacy as a representative—because she was the very individual responsible for ensuring class members took uninterrupted meal breaks. Further, although the District Court acknowledged the numerous individualized issues required to generate answers on whether, why, and how often any particular employee's meal break was interrupted

8

(or not), it incorrectly dismissed them as relating only to damages and therefore irrelevant to class certification analysis.[1] The District Court thus removed plaintiffs' burden to show that "a class-wide proceeding [could] generate common *answers* apt to drive the resolution of the litigation" in order to find that Plaintiffs satisfied Rule 23(b)'s predominance requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The District Court also erred in finding that Plaintiffs had established Rule 23(b)'s superiority requirement despite presenting a "trial plan" which consisted of nothing more than a proposal to bifurcate liability from damages and then using a telephonic survey by Plaintiff's own expert to estimate an average and then assume damages from those survey results across an entire class that knowingly contained individuals who had in fact suffered no damages. This plan neither addresses how liability can be established across the class in the first place nor how damages could ever be proven or calculated across the class with admissible evidence. Indeed, courts

---

[1] Notably, in denying Defendants' Motion to Stay Proceedings pending this appeal, the District Court provided a contradictory rationale for the class certification from the one articulated in its order granting that certification. Where the District Court had previously acknowledged and then dismissed the individualized inquiries required to determine how often meal breaks were interrupted for each class member because such inquiries related only to damages, ROA.11128, it then rationalized ignoring those individualized issues because they were "focuse[d] on merits-based questions." ROA.11406–11407. The District Court thus found the individualized issues were irrelevant because they only related to damages instead of liability, before contradictorily holding that they were irrelevant because they related to liability. These rationales are not only irreconcilable, but they are both incorrect as significant individualized issues in damages or liability precludes class certification.

have long held that class treatment is improper where damages cannot be determined through a mechanical or formulaic method. *See Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306–07 (5th Cir. 2003) (explaining that class treatment is inappropriate where damages require individualized "mini-trials" or where the proposed damages formula is "clearly inadequate"). Here, Plaintiffs' survey-based proposal—which assumes damages for employees who experienced none—mirrors precisely the type of inadequate, non-formulaic approach that defeats predominance and renders class treatment unworkable.

Accordingly, in certifying both the Rule 23 class and the FLSA collective, the District Court fundamentally misunderstood and misapplied this Court's jurisprudence on what renders a meal break compensable by holding that the mere theoretical "possibility of interruption" precludes a break from being *bona fide*. It further failed to require Plaintiffs to satisfy any of their legal burdens at certification while simultaneously ignoring Defendants' evidentiary showings that such burdens had not been and could not be met. This Court should correct these errors and reverse all of the District Court's certification decisions.

**STATEMENT OF THE CASE**

## I.    FACTUAL BACKGROUND

### A.    *River Place Behavioral Health*

River Place Behavioral Health Hospital ("River Place") is a mental health hospital in LaPlace, Louisiana. ROA.4598. River Place's policies require that all non-exempt, hourly employees, including those with patient care responsibilities, take uninterrupted 30-minute meal breaks, be relieved of all duties during their meal breaks, clock out for those breaks, and take their breaks away from their workstation. ROA.1804–1805. Although these policies contemplate that a patient care employee's unpaid meal break may be interrupted in order to respond to a patient emergency, such interruptions rarely occur. ROA.1804–1805. Even when patient emergencies do occur, they are not directed to any specific employee but are called out as codes over a facility-wide intercom system. ROA.9563:20–23. Responding to such codes while on a meal break is not required by River Place's policies nor is it encouraged by its management. ROA.9583:8–19, 9587:20–9588:12, 9627:13–22, 9641:3–9642:15, 9649:9–23, 9653:16–22. Instead, responding to a code is the responsibility of the staff who are not on a break at the time of the code. ROA.9693:13–17, 9753:19–9754:11, 9756:11–16, 9767:14–9768:9; *see also* ROA.9640:16–9642:15, 9590:16–9591:11. Some patient care staff, however, chose to respond occasionally to these codes while on a break depending on the

11

circumstances, and they clock back in before returning to work when they do so. ROA.9583:22–9584:2, 9589:16–24, 9649:9–9650:13.

During the first few months of River Place's operation in the summer of 2017, the facility was in a startup phase with no patients, and consequentially, there were no interruptions to any employee meal breaks. ROA.9764:20–9765:8, 9792:22–24, 9794:16–19, 9796:7–9, 9798:23–2, 9802:24–9803:1, 9804:12–15. When the facility first opened its doors to patients in August 2017, it only operated a single unit for the care of adults patients. ROA.9763:7–11, 9805:22–25, 9807:10–13. At that time, the facility operated at low occupancy and there were few, if any, interruptions to employees' meal breaks. ROA.9802:24–9803:1, 9804:12–15, 9805:22–25, 9807:10–13, 9764:20–9765:8. By February 2020, the facility expanded to its maximum size and included five units caring for different types of patients, with one unit serving geriatric patients and another serving adolescent patients. ROA.9663:10–13, 9665:13–22, 9810:25–9811:1, 9813:8–9814:12, 9819:1–24, 9855:1–9, 9826:21–9827:4.

### B.    *Named Plaintiffs Amy Hamm and Joye Wilson*

Plaintiff Hamm worked at River Place as a Nurse Supervisor on the night shift for eight months from February until she resigned in September 2020. ROA.2326:7–9, 2338. As a Nurse Supervisor, it was Hamm's responsibility to ensure that all the nursing staff on the night shift followed River Place's meal break policy.

ROA.9656:19–9659:10, 9664:13–15, 9667:15–9668:18. Hamm's job duties included making sure patient care staff took meal breaks away from their workstation every day, were relieved of their duties during these meal breaks, and never worked off-the-clock without compensation. ROA.9667:15–9668:18, 9669:13–17, 9679:6–9680:16. According to Hamm, she performed these duties well, and all the patient care staff were able to take uninterrupted meal breaks without issue. ROA.9662:8–19, 9669:13–9670:22, 9676:16–9678:25, 9681:5–9684:9. Hamm's only complaint about meal breaks at River Place was her inability to take such breaks at all due to her additional duties as a manager, not that she ever took unpaid meal breaks that were so regularly interrupted that they were not true breaks.[2] ROA.9660:4–11, 9661:1–14, 9689:21–9690:8.

Plaintiff Wilson was employed as a Tech at River Place for nine months from the facility's infancy in August 2017 until May 2018, when she was terminated for leaving shifts without permission and abandoning her patients. ROA.9773:22–9774:1, 9781:8–9782:14, 9781:16–20, 9783:6–9785:11. As a Tech, it was Wilson's

---

[2] Although Hamm, repeatedly and unequivocally denied ever being interrupted during a meal break at River Place in her first deposition, ROA.9662:1–19, 9689:21–9690:8, 9691:8–9693:9, her counsel subsequently used her errata sheet to fundamentally alter this deposition testimony that refuted the claims they had brought on her behalf. ROA.2019–2022. Hamm denied being interrupted during her meal breaks under oath so many times, however, that plaintiff's counsel failed to change her testimony every time she did so. ROA.2022, 9662:1–19, 9689:21–9690:8.

responsibility to provide various personal care services to patients under the direction of a nurse, including escorting patients to the restroom, taking vital signs, and reporting any changes in vital signs to nursing staff. ROA.9752:1–13, 9757:21–22, 9758:4–9759:2, 9761:20–23. According to Wilson, she did not have any issues taking uninterrupted meal breaks during the beginning of her employment before River Place opened to patients, and she never took a meal break once there were patients; thus, she never had a single meal break interrupted throughout her employment. ROA.9764:20–9765:8, 9771:15–9772:23, 9778:5–9779:4.

### C.   *Differing Meal Break Experiences*

Not only were the meal break experiences at River Place for Hamm and Wilson different from the purported theory for their class, but they also varied among the class members depending upon numerous factors unique to each individual, including: (1) their job position; (2) their shift (8-hour day, 12-hour night, and 12-hour day); (3) the unit of the facility where they worked; (4) their supervisor; (5) their gender; and (6) the phase of the facility's operations at the time of their employment. ROA.868:22–24, 870:2–21, 908:24–909:1, 852:20–853:8, 1130:8–1131:12, 1812:10–18, 774:3–777:7, 1246:18–24. For example, RNs had additional managerial responsibilities that often kept them from taking meal breaks at all that other patient care employees, including mental health technicians, did not have to endure. ROA.1828:25–1830:12, 1129:4–24, 1105:4–14, 1274:19–1275:3. This lack

14

of taking breaks meant that they often remained on the clock throughout their entire shifts and were fully compensated for that time, without even having the possibility of being interrupted during a meal break. ROA.9688:7–9, 9860:4–13. In contrast, the responsibilities of other hourly patient care employees differed greatly from those of an RN, and unlike RNs, they were in fact able to take a meal break and those breaks were rarely interrupted. ROA. 9580:4–9581:16, 9618:18–9620:10, 9631:3–9634:1, 9642:23–9644:10.

As another example, fewer staff worked on the night shift, so those who did were more likely to choose to respond to a code while on break or did not take a meal break at all when compared to staff who worked the day shift. *See* ROA9811:1–20, 9816:15–19, 9817:23–9818:4, 9852:25–9853:3, 9858:22–9859:2, 9836:16–19. Similarly, those employees that worked in Units 2 and 3 had access to break rooms that were outside of the patient hallway, meaning that patients could not interrupt them during their breaks by knocking on the door, as sometimes allegedly occurred in Unit 4. *See* ROA.9692:21–9693:2 (discussing patients interrupting meal breaks by knocking on the door of break rooms); *compare* ROA.9863:4–15 (break room in her unit was behind a locked door outside the patient hallway) *with* ROA.9573:15–9574:16 (discussing that the break room in Unit 4 was located inside the unit and was accessible to patients). Likewise, employees who worked on Unit 1 with geriatric patients or on Unit 4 with adolescent patients were also less likely to be

15

interrupted by a patient emergency than those on units with adult patients because of the reduced needs of those patient populations. ROA.9837:1–2, 9562:17–9564:10, 9573:21–9574:1, 9582:6–16. Additionally, young or male employees were more likely to respond to codes involving an aggressive male patient when on a meal break than old or female employees because such codes would sometimes require employees with more strength to restrain the patient. ROA.9585:16–9586:4, 9666:10–18, 9838:18–24.

Despite these differences in the employees' individual meal break experiences, however, River Place's meal break policy and practice was to always ensure that employees were fully compensated for all time spent working, including on those rare occasions when their meal breaks were interrupted. ROA.1803. ("Every effort should be made to provide an unpaid meal break for employees, and they should be paid when that break is unavoidably missed or interrupted…. If it becomes necessary for employers to remain on duty during their meal breaks or if they are called back to work by management, employees will be paid for the entire meal break"); *see also* ROA.9871:25–9873:19, 9874:25–9876:7, 9598:24–9599:12, 9602:13-9605:15, 9610:11–15, 9618:18–9620:4, 9639:3–20. The meal break practices were also consistent with respect to various other aspects that demonstrate that meal breaks were true breaks for the benefit of the employees, including that (1) patient care employees did not have to carry any kind of electronic communication

16

device that might be used to call them back from a break; (2) locked breakrooms were provided away from work areas where employees were encouraged to take their meal breaks; (3) employees were instructed and expected not to perform any work on their meal breaks; and (4) employees were free to take their meal breaks outside the facility and in practice often did. *See* ROA.9570:8–11, 9583:22–9584:2, 9587:20–9588:12, 9594:15–19, 9595:1–6, 9627:13–22, 9640:16–9642:15; *see also* ROA.9753:19–9754:11, 9756:11–16, 9766:18–25, 9767:14–9768:9, 9777:11–18, 9857:10–17, 9842:11–14, 9674:22–9675:15, 9693:13–17.

## II.   PROCEDURAL BACKGROUND

Hamm brought her collective claims under the FLSA and her Rule 23 claims under Louisiana common law (unjust enrichment, conversion). ROA.6194–6220. Originally, she based her claims on theories of an automatic meal deductions being applied while employees continued to work and other undefined "off-the-clock" work. ROA.1698–1699; *see also* ROA.4615. After discovery showed that River Place has never had an automatic meal deduction at all and that Hamm affirmatively denied ever working off-the-clock or knowing of any employees ever working off the clock, Plaintiffs' theories shifted, eventually settling on the theory that employees were "effectively on-call" during their meal breaks because their "ethical duties" to their patients "required [them] to be responsive to patient needs" even when on break, and thus their meal breaks were compensable time. ROA.6194–6220. It was under this

"effectively on-call" theory that Plaintiffs sought certification under the FLSA and Rule 23. ROA.1698; ROA.7340.

On July 13, 2022, the District Court certified a FLSA collective on this "effectively on-call" theory. ROA.4611–4621. The sole rationale provided by the District Court for how the collective was similarly situated was that Defendants' policies allowed that "meal breaks are subject to possible interruption and therefore [could] be considered 'on-duty' time." ROA.4615–4616; *see also* ROA.4617 ("the ultimate issue [is that] meal break[s were] susceptible to interruption … whether or not they were interrupted"). The District Court's decision contained no discussion of the relevant predominant benefit test for determining whether a meal break should be treated as compensable and did not find that that the collective was similarly situated as to the one disputed fact that could possibly support the merits of Plaintiffs' theory under the relevant test—that meal breaks were so frequently interrupted for all collective members that those breaks were not *bona fide*. ROA.4611–4621.

After FLSA notices were sent out and additional discovery conducted, Defendants moved to decertify the collective. ROA.8580–8581. The District Court, however, denied the decertification motion on the novel ground that by rejecting the lenient two-step *Lusardi* certification process, this Court's decision in *Swales* had also eliminated a defendant's right to ever move for decertification. ROA.10813–10823.

18

When Defendants moved to certify the District Court's denial of decertification for interlocutory appeal before this Court, the District Court denied that motion, explaining that it was "in the interest of judicial economy for the Court to conclude Plaintiffs' lawsuit sooner," despite finding that all the factors for granting an interlocutory appeal were present. ROA.10973–10980.

Plaintiffs moved for certification of a Rule 23 class on January 10, 2024 under the same "effectively on call" theory. ROA.7343. The District Court first ruled on the motion on September 13, 2024, finding that Plaintiffs had satisfied Rule 23(a)'s factors for certification, including typicality and adequacy, but had not satisfied Rule 23(b)'s predominance or superiority requirements. ROA.10838–10850. Instead of denying certification due to these deficiencies, however, the District Court deferred ruling on those factors and afforded Plaintiffs another chance to satisfy those requirements. ROA.10843–10850. The District Court subsequently gave Plaintiffs a total of eight opportunities to correct these patent deficiencies, including: (1) the original motion, (2) the reply brief, (3–4) two supplemental briefs, (5–6) two telephonic conferences, (7) an undocketed letter, and (8) a sur-reply to Defendants' supplemental briefing. ROA.7340–7365, 9958–9975, 10647–10655, 10849, 10851–10856, 11098, 11101–11109, 11115. Ultimately, the District Court certified a Rule 23 class on September 2, 2025, finding that abstract questions like "whether [employees] are effectively on call and are entitled to be paid for their meal breaks"

19

were common to the class and established predominance despite acknowledging the overwhelming evidence that the factors for answering such questions—like the frequency of actual interruptions—were highly individualized. ROA.11121, 11126–11128. The District Court similarly found that Plaintiffs' mere suggestion to bifurcate liability from damages and plan to conduct a survey of class members to establish an average amount of damages and apply that average across the class was an adequate trial plan to establish superiority regardless of the highly individualized question of whether each class members meal breaks were interrupted at all, let alone so frequently that they were not *bona fide*. ROA.11109–11128.

Defendants filed a timely Rule 23(f) Petition for Permission to Appeal the District Court's four different orders granting class certification under Rule 23, granting collective certification FLSA, and denying Defendants' motion for decertification of the FLSA collective. ROA.11230–11267. The Court granted permission to appeal on October 22, 2025. ROA.11268–11269. The Court also granted Defendants' Motion to Stay the Proceedings in the District Court pending this appeal on January 28, 2026. (5th Cir. Doc. 46-2).

20

**SUMMARY OF THE ARGUMENT**

The District Court's certification orders involved two overarching significant legal errors: (1) failing to apply the relevant analysis for determining if a meal break is *bona fide* under the FLSA or Louisiana common law; and (2) failing to apply the correct legal standard for FLSA or Rule 23 certification by removing Plaintiffs' burdens to submit evidence establishing Rule 23's requirements for class certification or a similarly situated FLSA collective. Additionally, while the District Court removed Plaintiffs' burden to establish they are similarly situated to the collective under the FLSA, it also committed legal error in determining that this Court's decision in *Swales* prohibited Defendants from even being permitted to show that Plaintiffs are not similarly situated and decertify the collective.

**ARGUMENT**

## I.   Standard of Review

This Court reviews a district court's decision to certify a Rule 23 class under the abuse-of-discretion standard. *Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185, 190 (5th Cir. 2010). However, this Court exercises *de novo* review as to whether the district court applied the correct legal standard and the correct factual examination to that standard in reaching the certification decision. *Id.*; *see Bratcher v. Nat'l Standard Life Ins. Co.*, 365 F.3d 408, 414, 421–22 (5th Cir. 2004) (J. Clement dissenting). This Court likewise applies *de novo* review for legal determinations, such as whether this Court's decision in *Swales* precludes a defendant from moving for

21

decertification of a FLSA collective. *See United States v. Billingsley*, 615 F.3d 404, 409 (5th Cir. 2010).

Here, the District Court failed to apply the similarly situated standard as instructed by this Court in *Swales* or to apply the class certification standard under Rule 23. Indeed, it expressly ignored the relevant facts for those inquiries despite noting that consideration of them would necessarily be individualized and render certification untenable. ROA.11121, 11126–11128; *see also* ROA.4615–4617. The District Court likewise made the erroneous legal determination that this Court's decision in *Swales* had removed Defendants' due process rights to ever move for decertification of a FLSA collective. ROA.10813–10823. This Court reviews these errors *de novo*.

## II.    Plaintiffs' Required Certification Burdens

For certification under either the FLSA and Rule 23, a plaintiff must establish that their claims are capable of collective or class-wide resolution based on common proof. Although the mechanisms differ slightly, both frameworks demand a rigorous, evidence-based showing by the plaintiff that liability on the claims can be resolved collectively without devolving into individualized, plaintiff-specific inquiries.

### A.    *Plaintiffs' Required Certification Burden Under the FLSA*

The Fair Labor Standards Act permits employees to bring a collective action only on behalf of themselves and others who are "similarly situated." 29 U.S.C. §

22

216(b). Although the statute authorizes courts to facilitate notice to potential opt-in plaintiffs for case-management purposes, it does not define "similarly situated" or prescribe a certification procedure.

For decades, many courts applied the judge-made framework first articulated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.NJ, 1987), which adopted a two-step approach to FLSA collective actions. *Swales*, 985 at 434–37. At the first step—commonly termed "conditional certification"—courts applied a lenient standard, requiring only a modest factual showing that the named plaintiffs and potential opt-ins were similarly situated in a general sense. *Id.* This showing was often satisfied by little more than allegations of a common policy or practice, with courts expressly deferring consideration of factual disputes, merits questions, and individualized defenses. *Id.* If granted, conditional certification authorized the issuance of broad notice to potential opt-ins. *Id.*

Under *Lusardi*'s second step, defendants would move for decertification after discovery, at which point courts conducted a more searching analysis of whether differences among plaintiffs defeated collective treatment. *Id.* at 437. In practice, the lenient first step routinely resulted in the issuance of notice and substantial expansion of litigation based on little more than allegations, even where meaningful similarity appeared to be lacking. *Id.*

23

In *Swales v. KLLM Transport Services, L.L.C.*, this Court squarely rejected the *Lusardi* framework as untethered from the text of § 216(b) and unsupported by Supreme Court precedent. *Id.* at 434. The Court emphasized that the FLSA permits collective actions only for employees who are in fact similarly situated, and that district courts may not assume similarity provisionally, authorize notice, and defer the required analysis until later. *Id.* Central to *Swales* is this Court's instruction that district courts must "rigorously scrutinize" whether proposed plaintiffs are similarly situated at the outset of the case by determining "whether merits questions can be answered collectively…." *Id.* at 434, 442. The Court framed the controlling inquiry as "how rigorously, and how promptly, should a district court probe whether potential members are 'similarly situated,'" and answered that question by requiring searching, front-loaded scrutiny of the suitability for collective-wide resolution at the beginning, not a lenient or deferential review. *Id.* Where the district court finds that liability depends on plaintiff-specific facts or defenses requiring individualized determinations, collective treatment is improper and notice must be denied. *Id.* at 442–43.

Critically, *Swales* did not criticize the second step from *Lusardi* nor otherwise abolish a defendant's right to move for decertification nor strip district courts of the authority to revisit collective treatment should later evidence establish such treatment is improper. Rather, it rejected the first step of the *Lusardi* two-step

24

framework that made decertification a routine second phase of FLSA litigation by deferring any meaningful similarity analysis until after notice issued. *Id.* By requiring district courts to rigorously scrutinize whether plaintiffs are similarly situated with respect to the relevant issues for resolving the merits at the outset, *Swales* front-loads the inquiry demanded by § 216(b) while preserving the district court's ongoing authority to decertify, narrow, or otherwise limit a collective action if later discovery demonstrates that similarity is lacking. *Id.*

### B.    *Plaintiffs' Required Certification Burden Under Rule 23*

Similar to the FLSA's similarly situated requirement, class certification under Federal Rule of Civil Procedure 23 is appropriate only after a plaintiff affirmatively demonstrates compliance with Rule 23's requirements by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). District courts must conduct a rigorous analysis of each Rule 23 requirement, and may not presume compliance or defer critical issues for later resolution, even where that analysis overlaps with the merits. *Wal-Mart*, 564 U.S. at 351; *Unger*, 401 F.3d at 321. Where representative plaintiffs' claims depend on individualized circumstances—such as how workplace policies were applied to them in actual practice—Rule 23(a)'s requirements are not satisfied. *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020).

Rule 23(a) requires proof of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Commonality requires more than the mere presence of common questions; plaintiffs must identify a common contention capable of class wide resolution, such that its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Commonality thus fails where liability turns on individualized factual inquiries, even if plaintiffs allege a uniform policy or practice. *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (holding that "plaintiffs must demonstrate that their claims depend on a common contention 'of such a nature that it is capable of class wide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke'").

Typicality and adequacy require that the named plaintiffs' claims and interests be aligned with those of absent class members and not subject to unique factual or legal defenses. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479–80 (5th Cir. 2001). Typicality fails where the named plaintiffs are subject to unique defenses, or where resolution of their claims would not resolve the claims of other class members "in one stroke." *Wal-Mart*, 564 U.S. at 350–51. Likewise, adequacy is lacking where the named plaintiffs' claims rest on circumstances that are not shared by the class. *Id.* at 480.

26

Rule 23(b) imposes the additional burdens on plaintiffs of showing that common questions predominate over individual ones and that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b); *Castano*, 84 F.3d at 741. Predominance is a "far more demanding" inquiry than Rule 23(a)'s commonality requirement and requires courts to carefully examine whether liability can be decided on a class wide basis using common proof. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). Allegations of a common policy do not establish predominance where determining liability requires employee-by-employee inquiries into day-to-day work experiences. *See Wal-Mart*, 564 U.S. at 356–60. Superiority requires a plaintiff to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where "issues of [determining liability] and damages are highly individualized, [the case] would not be well-served by a class action." *Robertson v. Monsanto Co.*, 287 Fed. Appx. 354, 361 (5th Cir. 2008).

The bar demanded by Rule 23 for certification mirrors this Court's command in *Swales* that district courts must rigorously scrutinize, at the outset, whether proposed plaintiffs are in fact similarly situated with respect to merits before permitting aggregate litigation to proceed. 985 F.3d at 433–34. Just as *Swales* rejects assumptions of similarity under § 216(b), Rule 23 forbids certification based on

27

generalized allegations or speculation that individualized issues can be addressed later. *See Wal-Mart*, 564 U.S. at 351. Instead, a plaintiff must present actual evidence to support the commonality of the class under both standards before certification, and where individualized inquiries defeat collective treatment under the FLSA, those same individualized issues would defeat Rule 23 certification. *See Swales*, 985 F.3d at 433–34; *Castano*, 84 F.3d at 745.

### C.   *Alignment of Liability-Determining Issues Across the Class and Collective*

A central requirement that unites both § 216(b) collective actions and Rule 23 class actions is that plaintiffs must demonstrate sufficient commonality or similarity on the issues that will determine liability to obtain certification. Certification under either standard is improper unless the proposed group shares common answers—not merely common questions—on those liability-determining issues. *Swales*, 985 F.3d at 442 (instructing district courts to "[c]onsider[], early in the case, whether merits questions can be answered collectively"); *see Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020) ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation"). FLSA certification requires district courts to determine at the outset whether plaintiffs have shown they are "actually similar, not just alleged to be similar," with respect to the facts and defenses that will decide the merits of the

28

claim. *Swales*, 985 F.3d at 435, 441–42. Rule 23 imposes the same demand: plaintiffs must identify a common contention "capable of classwide resolution," meaning that its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

The district court does not reach or decide the merits at certification under the FLSA or Rule 23, but it nevertheless must determine that the proposed class or collective is commonly situated with respect to the merits-determining questions and the answers to those questions. *Swales*, 985 F.3d at 442; *Wal-Mart*, 564 U.S. at 350. Accordingly, unless Plaintiffs here had shown that the class and collective share common answers to the questions that will drive resolution of the merits, aggregate treatment is improper under both frameworks. As discussed below, Plaintiffs did not.

## III. Resolution of Plaintiffs' Claims Turns on Whether the Breaks at Issue were *Bona Fide* Meal Breaks, which in Itself Depends on the Frequency of their Interruption

Because certification under both § 216(b) and Rule 23 depends on whether the class or collective shares common answers to the merits-determining questions, the analysis here turns on whether the compensable meal break inquiry—the sole theory of Plaintiffs' claims—can be resolved with common proof. Whether a meal period is *bona fide,* and thus non-compensable, under the FLSA turns on the "predominant benefit" test. *Dean*, 3 F.4th at 144. Under that test, courts are to evaluate whether a break is predominantly for the benefit of the employee (a *bona fide* break) or

predominantly for the benefit of the employer (a compensable break). *Id.* The four factors provided by this Court for making that determination are: "[1] whether the employees are subject to real limitations on their personal freedom which inure to the benefit of the employer; [2] whether restrictions are placed on the employee's activities during those times, such as whether or not the employee may leave the work site if he chooses; [3] whether the employee remains responsible for substantial work-related duties; and [4] how frequently the time is actually interrupted by work-related duties." *Id.* (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 265 (5th Cir. 1998)). Critically, this Court has emphasized that these factors must be assessed in light of the actual workplace context and based on what each employee experienced in practice—not on abstract policy statements or generalized allegations. *See Dean*, 3 F.4th at 144–45. Even more critically, the fact that meal breaks are merely "susceptible to interruption" is not a relevant factor for establishing their compensability; "how frequently the time is *actually interrupted*" is the relevant factor. *Id.* (emphasis added); *see also Lee*, 937 F.2d at 225 (holding "meal breaks were *bona fide* meal periods" even when employees "were called back [] in an occasional emergency").

The predominant benefits test also governs whether a meal break is *bona fide* or compensable under Plaintiffs' state common-law claims. Admittedly, Louisiana does not have a well-developed body of meal-break jurisprudence for claims brought

30

under common law—likely due to the inherent individualized nature of common law claims generally, which makes them ill-suited for class treatment regardless of the specific theory on which they are based. *See Price v. Martin*, 79 So. 3d 960, 975 (La. 2011) (explaining that when common law claims are so highly individualized class certification is inappropriate). Nevertheless, the fundamental issue Plaintiffs must prove for their state common law claims is the same as it is under the FLSA—that Defendants improperly benefited from their uninterrupted[3] meal breaks and the withholding of compensation from those breaks. *See Wellmeier v. Lankau*, 2025 La. App. LEXIS 2038, *15 (La.App.3 Cir. 10/29/25) ("The root principle of unjust enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid."); *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 721 So.2d 853, 857 (La. 12/1/98) ("The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation."). Thus, Plaintiffs must show that their breaks were a benefit to Defendants rather than themselves for which they should receive compensation to establish liability for their common law claims.

---

[3] Again, when breaks where actually interrupted, employees clocked back in and were paid. ROA.9583:22–9584:2, 9589:16–24, 9649:9–9650:13.

31

That is why most courts across the country, including those in Louisiana, recognize that some version of the predominant benefit test is applied to determine meal break compensability—with the same or similar factors as those outlined in *Dean*—regardless of whether the plaintiffs' claims are brough under the FLSA, state common law, or state statute. *See, e.g., Bergeron v. Ochsner Health Sys.*, 2017 U.S. Dist. LEXIS 135622, *23–24 (E.D. La. Aug. 24, 2017) (discussing that the relevant question to determine whether patient care employees' meal breaks were compensable under the FLSA, Louisiana statute, and Louisiana common law claims of unjust enrichment and breach of contract is whether any work was performed "for the benefit of [the employer] during said employees' meal breaks"); *Belgada v. Hy's Livery Serv., Inc.*, 220 Conn. App. 102, 133 (2023) (applying the predominant benefit test to determine whether chauffeur's meal breaks were compensable under Connecticut's minimum wage act and a common law breach of contract theory); *Formica v. US Envtl. Inc.*, 2018 U.S. Dist. LEXIS 115084, *7 (E.D. Pa. July 11, 2018) (discussing the predominant benefit test for meal break claims under the FLSA and dismissing meal break claims raised under state statute and common law because they are based on the same facts); *DeVito v. Longwood Sec. Servs.*, 2016 Mass. Super. LEXIS 828, *3 (Suffolk Cty. Sup. Ct. Dec. 23, 2016) (applying the predominant benefit test to determine if security officers' meal breaks were compensable under Massachusetts's wage statute and under common law theories of breach of contract and unjust

32

enrichment); *Melgar v. O.K. Foods, Inc.*, 2015 U.S. Dist. LEXIS 41807, \*9–10 (W.D. Ark. March 31, 2015) (applying the predominant benefit test when assessing the viability of plaintiff's meal break claims under the FLSA and the Arkansas Minimum Wage Act); *Ellis v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 2012 U.S. Dist. LEXIS 40288, \*26–27, 32–34 (E.D.N.Y. March 23, 2012) (applying the predominant benefit test to determine whether chauffeurs' meal breaks were compensable under the FLSA, the New York Minimum Wage Act, and under common law claims of unjust enrichment and breach of contract); *Carter v. Jackson-Madison County Hosp. Dist.*, 2011 U.S. Dist. LEXIS 35163, \*23–24 (W.D. Tenn. March 31, 2011) (allowing plaintiffs' unjust enrichment claim to proceed where the "factual allegations evidence a benefit—the work of [p]laintiff and other employees during meal breaks—conferred on the defendant"); *Jackson v. Wal-Mart Stores*, 2005 Mich. App. LEXIS 2975, \*16–19 (Mich. Ct. App. 2005) (discussing how plaintiff's unjust enrichment claims required plaintiffs to show "the receipt of a benefit by Wal-Mart, in the form of work performed off the clock or during periods when an employee was entitled to be on break").

Accordingly, whether a compensable meal break claim is brought under state common-law or the FLSA, liability for that claim turns on the application of the predominant-benefit test.

33

**IV.** **The District Court Impermissibly Ignored the Predominant-Benefit Test and Certified the Class and Collective Based on an Irrelevant Common Fact**

Before certifying an FLSA collective, courts must "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Swales*, 985 at 441. Then, to obtain certification, the plaintiff is required to present evidence to show that "merits questions can be answered collectively" across the whole collective. *Id.* Similarly, before certifying a Rule 23 class a district court must, *inter alia*, "determin[e] whether the plaintiffs can clear the predominance hurdle [by showing] how a trial on the merits would be conducted if a class were certified." *Bell Atl. Corp.*, 339 F.3d at 302. It must "identify[] the substantive issues that will control the outcome, assess[] which issues will predominate, and then determine[e] whether the issues are common to the class." *Ahmad*, 690 F.3d at 702. Further, it is the plaintiff's burden to show that "[t]heir claims [] depend upon a common contention," and the common contention is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

With respect to the meal break claims brought here, the central determination for answering the merits of Plaintiffs' claims is whether class and collective members' meal breaks were primarily for the benefit of the employees or the Defendants. *See*

*supra* Argument Section III. The District Court was thus required to consider whether the predominant benefit test could be applied and answered on a collective-wide basis. *Swales*, 985 F.3d at 442; *Wal-Mart*, 564 U.S. at 350. Under that test, liability does not turn on whether a break *could* be interrupted, but on whether interruptions were so frequent and so intrusive that the break ceased to be a *bona fide* meal period. *Dean*, 3 F.4th at 144. Thus, the relevant common questions that the District Court was required to consider and determine could be collectively answered are those that determine the frequency, nature, and impact of *actual* interruptions—not the mere possibility that interruptions might occur.

Instead of considering what questions would need to be answered to establish the merits of Plaintiffs' claims under the relevant predominant benefit test—let alone actually finding similarity or commonality on those questions—the District Court simply found commonality with respect to a single irrelevant fact for the merits of Plaintiffs' claims (the *mere possibility* of a meal break interruption) and declared that single commonality sufficient. ROA.10838–10842, 11121; *see also* ROA.4615–4617. In doing so, the District Court failed to ever identify the liability-determining questions and failed to analyze whether those questions could be answered collectively. It simply substituted an immaterial fact for the actual merits inquiry and declared similarity and commonality satisfied based on that one immaterial fact. ROA.10838–10842, 11121.

35

Again, however, whether a meal break simply could be interrupted is not, and has never been, a relevant issue for determining whether Plaintiffs' meal breaks were compensable work time. *See Dean*, 3 F.4th at 144–45 ("how frequently the time is actually interrupted by work-related duties" is a factor in determining if a break is *bona fide*; "[a]ny infrequent interruptions do not invalidate the policy of a noncompensable meal period."); *Lee*, 937 F.2d at 225 (holding "meal breaks were *bona fide* meal periods" even when employees "were called back [] in an occasional emergency"). It thus cannot alone be a sufficient basis for determining a collective is similarly situated or that common issues for resolving the merits predominate across a class in a meal break claim.

Indeed, Defendants have been unable to locate a single other federal court in the country that has ever certified a FLSA collective (beyond the lenient first-step conditional certification that *Swales* rejected) or a Rule 23 class (outside a state that mandates by state statute an uninterrupted meal break be taken on every shift) on a meal break claim based solely on the "possibility" of breaks being interrupted to perform work. This absence is no doubt because the relevant merits questions involve the occurrence and frequency of *actual* interruptions—not just their theoretical possibility. *Dean*, 3 F.4th at 144. In contrast, courts within this circuit and across the country that have considered the issue have universally held that the mere possibility of a meal break interruption is insufficient to support class or

36

collective certification. *See Jones-Turner v. Yellow Enterprise Sys., LLC*, 597 Fed. Appx. 293, 297–98 (6th Cir. 2015) (affirming denial of Rule 23 class certification and decertification of FLSA collective because simply being "subject to emergency calls" does not render meal breaks compensable without some other evidence the breaks were predominantly for the benefit of the employer such as employees being required to remain at their work station or perform work while eating and "without a viable claim, lead plaintiffs cannot represent others whom they allege to be similarly situated"); *Kaiser v. St. Luke's Episcopal-Presbyterian Hosps., Inc.*, 2025 WL 3537524, *3 (E.D. Mo. Dec. 10, 2025) ("But the mere fact that employees have uncompensated meal breaks during which they could be interrupted is not an FLSA violation."); *Stepp v. Seton Family of Hosps.*, 2018 U.S. Dist. LEXIS 227650, *12–16 (W.D. Tex. Apr. 17, 2018) (denying even pre-*Swales* FLSA conditional certification on plaintiff's theory that Defendants require "nurses to make themselves subject to interruption during their meal breaks" where the only evidence presented of frequent interruption was plaintiff's own declaration); *Miller v. Thedacare Inc.*, 2018 U.S. Dist. LEXIS 7767, *36 (E.D. Wis. Jan. 17, 2018) (denying Rule 23 class certification and decertifying FLSA collective because "the question of how many, if any, of the meal periods of each employee within the class over the period of time covered by the complaint were interrupted and are therefore compensable because of work performed does not lend itself to a single

37

adjudication"); *Haviland v. Catholic Health Initiatives–Iowa*, 729 F. Supp. 2d 1038, 1062 (S.D. Iowa 2010) (dismissing Plaintiffs' FLSA and Rule 23 class claims for "on-call" breaks where plaintiffs—like the named Plaintiffs here—"failed to provide even a single discrete instance where one of their lunch breaks … was actually interrupted" and "failed to proffer any evidence that, during their meal periods, they were actually … performing any job duties other than carrying radios and being available to respond to calls should the need arise"); *Agner v. United States*, 8 Cl. Ct. 635, 638 (1985) ("The mere fact that an employee is required to eat lunch on the employer's premises and to be on a duty status, subject to emergency call during such period, does not convert [time where employees may 'eat, rest or engage in any other appropriate personal activity'] into compensable time."); *see also Dean*, 3 F.4th at 145 ("Any infrequent interruptions do not invalidate the policy of a noncompensable meal period.").

By focusing exclusively on the immaterial fact of whether the meal breaks were merely susceptible to interruption, the District Court never analyzed the questions that actually determine liability under the applicable predominant-benefit test could be answered collectively. *See* ROA.10838–10842, 11121, 4615–4617. Instead, the District Court found commonality on the single immaterial issue of "interruptability," and then declared that one similar fact sufficient. *Id.* Accordingly,

38

this fundamental error, which infects all of the District Court's certification orders, should now be corrected.

**V.    The District Court Erred by Removing Plaintiffs' Burdens to Establish the Requisite Factors Before Certifying the FLSA Collective and Rule 23 Class.**

The District Court's errors in failing to consider the relevant issues for certification or consider the evidence presented on those issues impermissibly altered both the FLSA and Rule 23 frameworks by relieving Plaintiffs of the evidentiary burdens each scheme imposes upon them and by presuming, rather than requiring proof of, Plaintiffs' satisfaction of these burdens.

**A.    *The District Court Removed Plaintiffs' Burdens Under the FLSA and Swales***

The District Court's errors began with its treatment of the FLSA collective. Under *Swales*, Plaintiffs bear the burden to demonstrate through actual evidence that the merits-determining questions can be answered collectively and that the proposed collective is "similarly situated" with respect to those questions. *Swales* requires courts to "rigorously scrutinize the realm of 'similarly situated' workers" and to certify a collective only "[a]fter considering all available evidence…." *Swales*, 985 F.3d at 434. The District Court, however, relieved Plaintiffs of this burden entirely. It accepted Plaintiffs' assertions of frequent interruptions at face value, ignored undisputed evidence showing that patient-care employees were relieved of all duties, faced no meaningful restrictions, and could even leave the facility during breaks, and

39

certified a collective without requiring Plaintiffs to produce any evidence of actual interruptions or any evidence at all of a common fact that could support liability. ROA.1515–1517. By doing so, the District Court effectively replaced Plaintiffs' evidentiary burden with a presumption of similarity based solely on allegations— precisely what *Swales* forbids.

This failure impacted the entire collective-action analysis. Hamm—the only plaintiff at the time—produced no declarations from other employees, no testimony from any opt-ins, and no evidence of even a single interrupted meal break by any collective member at the time she moved for FLSA certification. ROA.4615–4617. Moreover, Hamm herself testified that she had never experienced an interrupted break at all, ROA.9689:21–9690:8, and that she was unaware of any others who had been interrupted. ROA.9662:8–19, 9669:13–9670:22, 9676:16–9678:25, 9681:5–9684:9. If *Swales* had been applied,[4] this evidentiary vacuum should have precluded certification. By certifying the collective anyway, the District Court removed

---

[4] It is worth noting that the District Court initially was reluctant to even apply *Swales*, and only facially—but not in actuality—did so after Defendants provided a brief urging it to do so. *See* ROA.1464–1472. It is also worth noting that in its order finding *Swales* should be applied, the District Court expressly stated that "review of policy documents alone will be insufficient for conducting the rigorous similarly situated analysis required under *Swales*" and that it "should consider merits issues when they go to the scope of the collective." ROA.1470–1471. Unfortunately, the District Court then subsequently granted certification based solely on the fact that River Place's policy permitted possible interruption regardless of the fact that the possibility of interruption cannot answer the merits issues in this case. ROA.1515– 1517.

Plaintiffs' burden to prove similarity and allowed the collective to proceed based solely on conclusory allegations and theoretical possibilities that the only evidence presented at that time refuted.

Further, the District Court compounded its error by ignoring this Court's command in *Swales* and blatantly ignoring key evidence in the case that showed that Hamm and the collective were not similarly situated. *Swales* required the District Court to "rigorously scrutinize the realm of 'similarly situated' workers," and only certify a collective "[a]fter considering all available evidence…." *Swales*, 985 F.3d at 434. The District Court did no such thing. It ignored that the undisputed evidence showed that none of the first three factors in *Dean* could even *possibly be present* to support the collective claim because patient care employees did not have any significant limitations placed on them during their breaks, were relieved of all duties, and were even able to leave the facility, and it further ignored that Hamm had presented no support for the one factor that might support her theories and that the only evidence of that factor showed that she herself could not be similarly situated to the collective. ROA.1515–1517. Instead, the District Court took Hamm's assertions in her briefs that the collective members were so frequently interrupted that they were "effectively on-call" during their meal breaks at face value without considering any—let alone all—of the available evidence showing that they were not similarly situated with respect to that factor either. *Id.* This again removed Plaintiffs'

41

burden to show that the merits-determining questions could be answered with common proof.

Indeed, Hamm herself testified that she *never* had an interrupted meal break and there was the complete absence of any evidence that even a single employee ever had an interrupted meal break. ROA.9689:21–9690:8. Aside from misleading snippets from Hamm's own testimony and a self-serving declaration, she submitted no evidence, such as declarations from any other employees or other opt-in plaintiffs, to support her motion. This lack of evidence beyond conclusory and misleading assertions from the named plaintiff herself would have been insufficient for certification under the old two-step conditional certification, let alone under the higher bar set by *Swales*. *See Mallory v. Lease Supervisors, LLC*, 2018 U.S. Dist. LEXIS 114106, *8 (N.D. Tex. July 10, 2018) ("Plaintiffs' inability to procure affidavits from potential opt-in plaintiffs strongly suggests that there is no class of similarly situated Lease Supervisors managers/operators who are willing to participate in this collective action."); *Magana v. Shore Constr., LLC*, 2018 U.S. Dist. LEXIS 41497, *15–16 (E.D. La. Mar. 13, 2018) ("Plaintiff fails to present an affidavit or even the name of a single similarly-situated employee. Despite the lenient standard in *Lusardi* to certify a collective action, at least some evidence beyond unsupported factual assertions of a single decision, policy, or plan should be presented."). Indeed, nearly all district courts in this Circuit that the absence of any

opt ins or affidavits from other employees effectively precludes any certification of a collective even on the extremely lenient *Lusardi* standard this Court rejected for not being rigorous enough. *See Mason v. Amarillo Plastic Fabricators*, 2015 U.S. Dist. LEXIS 95624, \*10 (N.D. Tex. July 22, 2015) ("Affidavits asserting that other potential plaintiffs wish to opt into the lawsuit are a nearly universal prerequisite to notice and conditional certification of an FLSA collective action."). Thus, by certifying despite this absence of evidence, the District Court effectively eliminated Plaintiffs' burden under *Swales*.

### B.    Plaintiffs Failed to Satisfy Every Rule 23 Requirements, yet the District Court Removed Their Burdens There Too

The District Court similarly erred by removing Plaintiffs' burden to properly establish all requisite elements under Rule 23(a) and Rule 23(b), including commonality,[5] typicality, adequacy, predominance, and superiority. Fed. R. Civ. P. 23(a)–(b). In each case, rather than requiring Plaintiffs to prove these prerequisites with evidence, the District Court presumed them satisfied and ignored or improperly dismissed the evidence that demonstrated they were not present.

---

[5] Because predominance is simply a heightened form of commonality, courts often dispense with a separate commonality analysis and focus directly on whether common questions predominate. *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (explaining that the commonality requirement for class certification is often subsumed under, or superseded by, the more stringent requirement that questions common to the class predominate over other questions). Accordingly, although the District Court erred in finding commonality, Defendants will subsume that analysis under preponderance.

### 1.    Plaintiffs Failed to Establish Typicality or Adequacy

Typicality requires that the class representative's claims be "typical of the claims … of the class," meaning they arise from the same event, practice, or course of conduct and are based on the same legal theory as those of absent class members. Fed. R. Civ. P. 23(a)(3); *see also Berger*, 257 F.3d at 480. Adequacy requires that the named plaintiffs "fairly and adequately protect the interests of the class," a standard the Fifth Circuit has described as a "stringent" safeguard against conflicts and unfit representatives. Fed. R. Civ. P. 23(a)(4); *Berger*, 257 F.3d at 479–80. When the representative's circumstances diverge in material ways from those of the proposed class, typicality and adequacy are defeated because the representative cannot fairly advance the interests of individuals whose claims rest on different facts or defenses. *Berger*, 257 F.3d at 479–80.

Hamm's circumstances diverged in two material respects: she never experienced an interrupted meal break and she was responsible for ensuring others received uninterrupted breaks. ROA.9689:21–9690:8, 9656:19–9659:10, 9667:15–9668:18. Wilson likewise never experienced an interrupted meal break. ROA.9764:20–9765:8, 9771:15–9772:23, 9778:5–9779:4. Accordingly, both Plaintiffs face unique defenses not applicable to the class with respect to their claims and Hamm has an inherent conflict has an individual who could be liable to the class on her own theories. *See Stramaski v. Lawley*, 44 F.4th 318, 326 (5th Cir. 2022)

("'[I]ndividual[s] with managerial responsibilities' could be held jointly and severally liable for damages if the individual failed to comply with the FLSA …."); *Morrison v. Veale*, 2017 U.S. Dist. LEXIS 42099, *26 (M.D. Ala. Mar. 23, 2017) (granting summary judgment on failure to pay overtime claim because "Plaintiff was the very person responsible for administering … timekeeping and reporting system"). These undisputed facts defeat typicality and adequacy as a matter of law, yet the District Court ignored them, finding both requirements satisfied merely because "Plaintiffs and proposed class members advance the same legal and remedial theories" and "Hamm [has] maintain[ed a] willingness to participate as an active representative in the litigation." ROA.5110–5114.

### 2.    Plaintiffs Failed to Establish Predominance

The District Court also removed Plaintiffs' burden to establish predominance. Rule 23(b)'s predominance inquiry requires "not the raising of common questions— even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). The District Court, however, conceded there were "numerous" variables necessitating individualized inquiries, yet it inexplicably concluded that "each variable impacts only the frequency and duration of each . . . class member's meal break interruptions and not whether class members are entitled to pay for their work"—even though that frequency is the very factor at issue in

45

determining whether class members are entitled to pay for their breaks. ROA.11126–11128; *Dean*, 3 F.4th at 144. The District Court likewise adopted the vague and abstract "common questions" proposed by Plaintiffs—such as "whether [employees] are effectively on call and are entitled to be paid for their meal breaks"—without ever addressing whether such questions are actually susceptible to common *answers* that "drive resolution of the litigation." ROA.11121–11128; *Wal-Mart*, 564 U.S. at 350. Thus, the District Court simply ignored Plaintiffs' burden to establish common answers capable of resolving the litigation while acknowledging, but dismissing out of hand, the very record evidence put forward by Defendants showing that such answers are not common to the class. By treating the merits-determining factor—frequency of actual interruptions—as irrelevant to predominance, the District Court effectively removed Plaintiffs' burden to show that the merits could be resolved with common proof.

Finally, the District Court noted in its denial of Defendants' Motion to Stay that it was correct to ignore any consideration of the individualized nature of the inquest into relevant factors for determining liability on Plaintiffs' claims at the class certification stage because these are "merits-based questions." ROA.11406–11407. This statement from the District Court is an express admission that it failed to follow well-established Supreme Court precedent, which requires some consideration of merits questions—especially whether the facts that will go to proving or disproving

the merits are applicable across the class—when it granted class certification. *See*

*Comcast Corp. v. Behrend*, 569 U.S. 27, 28 (2013) ("The [class certification]

analysis will frequently 'overlap with the merits of the plaintiff's underlying claim'

because a 'class determination generally involves considerations that are enmeshed

in the factual and legal issues comprising the plaintiff's cause of action.'" (quoting

*Wal-Mart*, 564 U.S. at 351); *see also Swales*, 985 F.3d at 443 ("[T]he district court

need not ignore [] evidence to avoid using it for the wrong purpose."). By refusing

to consider whether the merits could be proven with common evidence, the District

Court eliminated Plaintiffs' burden to show predominance and effectively certified

a class on the assumption that the merits would sort themselves out later.

### 3.    <u>Plaintiffs Failed to Establish Superiority</u>

The District Court's superiority analysis is no better. In evaluating superiority,

a court must consider "how a trial on the alleged causes of action would be tried."

*Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 425 (5th Cir. 2004). The

District Court, however, just adopted Plaintiffs' trial plan to bifurcate liability and

damages with little analysis other than citing to Plaintiffs' promise that "if class

certification is granted, they will be able to provide an additional trial plan setting

forth more detail [for] how the case can be tried on a class basis." ROA.11126–

11128. In effect, the Court removed Plaintiffs' burden to show any workable trial

plan at all. This Court requires far more from both plaintiffs and district courts than

the mere promise of a workable trial plan to establish liability before finding superiority. *See Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 557 (5th Cir. 2011) (reversing certification where the court accepted a bifurcated trial plan as sufficient despite the individualized issues for establishing liability).

Similarly, that the individualized differences in meal break interruptions would result in different levels of damages among the class that could not be proven except by individual mini-trials likewise demonstrates the lack of superiority for a class action here. *See Bell Atl. Corp.*, 339 F.3d at 306–07 (explaining that class treatment is inappropriate where damages require individualized "mini-trials" or where the proposed damages formula is "clearly inadequate"); *see also Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (explaining that damages claims that were "not subject to any sort of formulaic calculation[,]" precluded superiority since "each individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result").

Despite acknowledging the individualized calculation to establish damages, however, the District Court simply decided that this issue could be resolved by removing Plaintiffs' burden to even prove damages at trial. ROA.11126–11128. Instead, the District Court accepted Plaintiff's proposal to have their own expert conduct a telephonic survey of class members about their meal break interruptions, average the amount of interruptions they report, and then "estimate" (i.e. assume)

48

damages across the class from that survey. ROA. 11126–11128. Plaintiffs' survey-based proposal—which even assumes damages for employees who indisputably experienced no harm—is precisely the type of inadequate, improper approach that demonstrates why class treatment unworkable.

Accordingly, by removing Plaintiffs' burdens at every turn, the District Court certified a collective and class that the law—and the record—simply cannot support.

## VI. The District Court Compounded its Errors by Not Permitting Defendants to Move to Decertify the Collective

The District Court's refusal to allow decertification did not merely misapply *Swales*—it cemented the District Court's broader, intertwined errors in eliminating Plaintiffs burdens under both the FLSA and Rule 23 while simultaneously stripping Defendants of the procedural protections these frameworks guarantee. Not only did the District Court misapply *Swales* to effectively remove the Plaintiffs' certification burden as discussed above, but it then further erred by misreading *Swales* as precluding Defendants from ever being permitted to present evidence refuting the similarly situated analysis at all. In effect, the District Court exacerbated the concerns this Court had with the old *Lusardi* lenient standard, while removing the aspect of the old standard (the second step) of which this Court approved.

In deciding *Swales*, this Court did not remove a party's ability to decertify a collective, nor did it alter the "similarly situated" analysis required for decertification. Instead, this Court criticized that under the *Lusardi* approach, district

49

courts did not apply a rigorous enough standard when assessing whether a plaintiff is "similarly situated" at the outset of the case. *Swales*, 985 F.3d at 434 ("In our view, a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.'"). Nowhere in the decision did this Court take issue with decertifying a FLSA collective or even so much as hint that decertification of an FLSA collective would be inappropriate should discovery from those who opt in reveal they are not similarly situated. *See id*. at 439 ("The real issues *Lusardi* creates occur not at decertification, but from the beginning of the case."). Further, no other court— including this one—has ever held or even indicated that *Swales* prohibits decertification of an FLSA collective. *Cf. Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 335, n.1 (5th Cir. 2023) (noting approvingly the use of the standard articulated in *Swales* for decertification of a pre-*Swales* conditionally certified collective without indicating that decertification of post-*Swales* collectives is no longer possible). There is simply no reasonable interpretation of *Swales* to support the District Court's decision.

Indeed, given this Court's expressed dissatisfaction with how the *Lusardi* approach was too rigid in application, it would be antithetical to the Court's concerns expressed in *Swales* to find that after certification, the District Court could no longer even consider whether collective treatment is appropriate for the remainder of the

case. *See Swales*, 985 F.3d at 440–41 ("We thus reject *Lusardi* because … its rigidity distracts district courts from the ultimate issues before it."); *Moore v. MW Servicing, LLC*, 2023 U.S. Dist. LEXIS 133773, *4–5 (E.D. La. Aug. 2, 2023) ("[T]here is no one-size-fits all analysis or mechanical test to apply [with respect to decertification]: 'The bottom line is that the district court has broad litigation-management discretion,' 'cabined by the FLSA's 'similarly situated requirement.'" (citing *Loy*, 71 F.4th at 337)). Post-*Swales* FLSA decertification should be permitted just as decertification of a Rule 23 class is permitted and appropriate if, after certification, later evidence is discovered showing that proceeding on a collective basis is inappropriate because the plaintiffs do not satisfy the appropriate standard. *See Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 739 n.6 (5th Cir. 2023) ("While many of GEICO's arguments [opposing Rule 23 class certification] have been rejected for being too speculative or underdeveloped, the district court may of course decertify the class if evidence supporting GEICO's arguments is unearthed at a later date."); *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 414 (5th Cir. 2017) ("And if the number of plaintiffs opting out demonstrated a cogent conflict, the district court could decertify the class.").

The District Court's shifting of burdens to remove any required evidentiary showing by Plaintiffs to obtain certification while blocking Defendants from even

being permitted to move for decertification as a matter of law[6] does not just violate the applicable law for class and collective certification, it violates fundamental principles of fairness and due process. *See Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414, 418 (5th Cir. 2023) ("[C]reative uses" of certification "are perilous" because improper certification "can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit" and therefore, "[n]o less than due process is implicated"). It also welded together the FLSA and Rule 23 errors: Plaintiffs were permitted to secure certification under both frameworks without evidence, and Defendants were denied the procedural mechanism of decertification that functions as the FLSA analogue to Rule 23's ongoing review.

The fundamental unfairness of the District Court's decisions is perhaps best illustrated by the fact that Wilson was not even a named plaintiff at the time of the District Court's FLSA certification decision. Because she was added post-certification and Defendants were blocked from even being permitted to show she is not similarly situated, she is now permitted to represent the collective despite the

---

[6] In a footnote, the District Court stated that even if decertification were legally permitted, it would have denied decertification because no new arguments or facts had been established during discovery. ROA.10813–10823. This revelation is stunning because it is simply untrue—Defendants conducted months of discovery, including deposing numerous opt-in plaintiffs, and presented the newly uncovered evidence supporting decertification in Defendants' briefs to the District Court. Therefore, this statement is effectively an admission from the District Court that it simply ignored or otherwise refused to consider the substantial decertification evidence presented by Defendants.

fact that the District Court has never actually found that she was similarly situated to the FLSA collective and despite the undisputed evidence that she is not in fact similarly situated, including her admissions that she never had an interrupted meal break. It would be a violation of fundamental due process to permit Wilson to remain a named plaintiff for a collective when she has expressly admitted that she is unsuitable as a class representative of a collective that was certified prior to Defendants ever having the ability to take discovery from her and Defendants are now blocked from even presenting such evidence. *Cf. Poirier v. Carson*, 537 F.2d 823, 824 (5th Cir. 1976) (noting the plaintiff's "due process right in civil litigation to take full advantage of the discovery procedures"); *Vuyanich v. Republic Nat. Bank of Dallas*, 82 F.R.D. 420, 434 (N.D. Tex. 1979) ("[t]o protect a defendant against inconsistent adjudications and the expense of defending several suits, a court must carefully scrutinize … its representatives").

By prohibiting decertification, the District Court collapsed the FLSA and Rule 23 frameworks into a single, burden-free certification process—one in which Plaintiffs need not prove similarity, typicality, adequacy, predominance, or superiority while Defendants are barred from challenging those defects. Nothing in *Swales*, Rule 23, or due process permits such a process. In short, the District Court certified both a collective and a class without requiring Plaintiffs to meet their evidentiary burdens, while simultaneously preventing Defendants from presenting

53

evidence demonstrating those deficiencies. These burden shifting errors—compounded by the District Court's failure to consider the relevant issues or evidence for resolving Plaintiffs' claims at the certification stage—require reversal so that the proper certification standards are restored.

## CONCLUSION

For these reasons, Defendants respectfully request that this Court reverse each of the District Court's certification rulings and decertify the Rule 23 class and FLSA collectives.

DATED: February 18, 2026.

Respectfully submitted,

*/s/ Frederick L. Conrad III*
Philip J. Giorlando
BREAZEALE, SACHSE &WILSON, LLP
909 Poydras Street
New Orleans, LA 70112
Tel: 504.680.5244
Philip.giorlando@bswllp.com

Frederick L. Conrad III
Matthew A. Caplan
HOLLAND & KNIGHT LLP
511 Union St., Suite 2700
Nashville, TN 37219-8966
Tel: 615.244.6380
Trip.conrad@hklaw.com
Matthew.caplan@hklaw.com

*Attorneys for Appellants-Defendants*

## CERTIFICATE OF COMPLIANCE AND SERVICE

I certify that this brief complies with Federal Rule of Appellate Procedure 27(d)(2)(A), Federal Rule of Appellate Procedure 32(c)(2), and Fifth Circuit Rule 32.1-32.2. Excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), the brief contains 12,144 words and has been prepared using Microsoft Word in Times New Roman 14-point font.

I certify that on February 18, 2026, I have filed the foregoing Appellants' Brief with the Clerk of Court, using the appellate CM/ECF system, which will send a notification of that filing to all counsel of record, including:

> Joseph C. Peiffer
> Daniel Centner
> PEIFFER WOLF CARR KANE &CONWAY, APLC
> 1519 Robert C. Blakes, Sr. Drive
> New Orleans, LA 70130
> Tel: 504.523.2434
> jpeiffer@pawcklegal.com
> dcentner@pwcklegal.com
>
> Carolyn H. Cottrell
> Ori Edelstein
> Robert E. Morelli, III
> SCHNEIDER WALLACE COTTRELL KONECKY LLP
> 2000 Powell St., Suite 1400
> Emeryville, CA 94608
> Tel: 415.421.7100
> ccottrell@schneiderwallace.com
> oedelstein@schneiderwallace.com
> rmorelli@schneiderwallace.com

*/s/ Frederick L. Conrad III*
Frederick L. Conrad III